UNITED STATES DISTRICT COURT
DISTRIT OF MASSACHUSETTS

| | |
|---|---|
| BEGASHAW AYELE, Pro Se<br><br>Vs.    Plaintiff<br><br>DELTA AIRLINES, INC.<br><br>Defendant | **Civil Action No.** _____<br><br>This Complaint is filed in compliance with judge William G. Young's Order of October 5, 2005. *¹ |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

INTRODUCTION:

This Civil Action against Delta Airlines, Inc. was supposed to be filed with the Suffolk Superior Court of Massachusetts as Delta Airlines, Inc. through its Customer Service Manager, Mr. John Goff had violated plaintiff's Civil/Employment Rights contrary to MGL. c. 151B §4(5) and/or the common law by *aiding and abetting* my former employer, G2 Secure Staff, LLC. to constructively discharge my employment. As G2 and plaintiff had arbitration agreement, the case was arbitrated and decided by the American Arbitration Association on January 14, 2017 see. *Ayele vs. G2 Secure staff, AAA Case No. 01-15-0003-4652.* Plaintiff was a prevailing party on the *main* cause of action – i.e., the Constructive discharge and Retaliation claim, if not denial of promotion and other. However, believing that the decision of the arbitrator was replete with countless errors, plaintiff had filed Motion to Vacate the Arbitral Award with the U.S. District Court but on 5/8/2017, the court denied my motion to vacate the award and closed the case. See *Ayele v. G2 Secure Staff,* Case No. 1:17-cv-10417-RGS (docket No. 23.) After the case was closed, I did not appeal the court's decision but expected to receive the monetary award as ordered by the Arbitrator. However, Defendant only paid money for lost regular and over time hrs. but not the six years lost *vacation* and *sick leave* benefit. Plaintiff was paid recently as I made a treat to file another lawsuit in court.

---

*¹ See. *Ayele v. U.S. Security Associates, Inc.*, Case No. 1:05-CV-11273-WGY-(statement between doc.no. 19 &20

## THE PARTIES

1. Plaintiff am an adult age and Citizen of the United States of America presently residing at 261 O'Callaghan Way No. 816, South Boston, Massachusetts 02127.

2. Defendant, Delta Airlines, Inc. is a Georgia based commercial airline company located at 1030 Delta Boulevard, Atlanta, GA 30320-6001. The airline also operate similar business in major U.S cities including at Logan Int'l airport, East Boston, Massachusetts, 02128.

3. The principal defendant that was before the state court and the American Arbitration, G2 Secure Staff, LLC. is also locally located at 982 Bennington Street, 3rd Floor, East Boston, MA. 02128. The Headquarters of G2 is also located at 5010 Riverside Drive, Suite 300 Irving, TX 75035.

## JURISIDICTION AND VENUE

4. Jurisdiction for this case is conferred by Title 28 U.S.C. §1331, §1332 and §1343

5. Venue is Proper for this court under 28 U.S.C. §1391(a)(1), (b)(1)

## MASSACHUSETTS' STATUTORY PROVISION

MGL. c. 151B s. §4(4), §4(4A) and §4(5) states respectively as follows:

> "it is unlawful practice for any person employer, labor organization or employment agency to discharge expel or otherwise discriminate against any practices because he has opposed any practices forbidden under c. 151B s. 4(4A) or because he has filed a complaint, testified, assisted in any proceeding under section §4(5) . . . It is also unlawful practice to coerce, intimidate, threaten or **interfere** with another person in the exercise or enjoyment of any right granted or protected by this chapter." ... "It is unlawful practice **for any person**, whether employer or an employee or **not**, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, MGL c.151B s. **§4(5)**. (Emphasis added.)

6. In addition to the above, plaintiff also rely on *Common Law*

## PROCEDURAL HISTORY

7. After plaintiff was constructively discharged from employment on November 19, 2010, the initial civil/employment complaint against G2 Secure Staff, LLC. and Delta Airlines, Inc. was filed on 05/16/2011 with the Massachusetts Commission Against Discrimination "MCAD" as case No. 11BEM01214 (2011).

8. A separate complaint against G2's violation of the Wage law was also filed with the Attorney General Office "AG" which, after the right to sue letter was secured from the AG office, the complaint on Wage Law violation was filed with superior court. While the wage law claims was pending with the court, plaintiff removed other Civil Rights complaint against G2 and Delta Airlines from MCAD and attempted (by amendment) to include my claim against Delta with the State court but the court denied the motion to amend and compelled me for arbitration. *[3]

9. As plaintiff and G2's had a *"Pre-dispute Resolution Agreement,"* to solve the dispute by arbitration, plaintiff repeatedly demanded G2 for arbitration but it refused. As a result, I was compelled to file charge of discrimination with Suffolk county superior court on January 3, 2012 but Defendant filed its motion to compel arbitration.

10. The state court had compelled arbitration but plaintiff was not agreed on the court's reasoning as to why I was compelled if defendant waived its right to arbitrate and, therefore, I had filed several appeal all the way up to the U.S. Sup. Ct. where the petition for Certiorari was denied, *Ayele vs. G2 Secure Staff, LLC. et. al Case No. 14-5569 (Oct 6, 201)*

11. Lastly, the G2 case was arbitrated without the claim against Delta. This lawsuit against Delta is therefore, brought at this time because when plaintiff attempted to amend my previous complaint to include Delta Airlines with the G2 case at the Superior court, (before

3

arbitration) the court denied the motion asserting that the case against Delta (as a *non-signatory* party) should also be arbitrated.

12. When plaintiff filed the complaint with the American Arbitration Association against Delta Airlines, Inc., it declined to sign the AAA's June 10, 2015 letter for Arbitration. Subsequently, the N.Y based AAA office Case Manager (Mr. Adam Shoneck) by e-mail dated June 25, 2015 @12:51pm informed me, the Claimant, that all my AAA complaint will dismiss if I did not remove Delta from my AAA complaint. Accordingly, I removed Delta Airlines, Inc. from my AAA complaint and brought the same case at this time to this court.

## STATEMENT OF THE CASE FACTS

13. Plaintiff commenced employment with G2 Secure Staff, Inc. on May 3, 2005 and worked as a Ticket Reader (checking documents of the travelling public at Terminal C of Boston Logan International Airport. I worked at this position for few weeks by standing Seven and Half ($7^{1/2}$) hrs. per Eight (8) hrs. shift but due to pre-existed leg injury, I requested some form of accommodation and was transferred to Terminal A to work both as Ticket Reader until a *non-standing* full time *Ramp Agent* position was available). After full time Ramp Agent position was available, I was assigned to that position and worked until November 19, 2010.

14. On November 18, 2010, I was stationed to work at Delta Airlines, Inc.'s Shuttle Service at Terminal A of Logan International Airport where the Customer Service Manager of Delta Airlines, Inc. was also Mr. John Goff. Mr. Goff knows full well that I was one of the G2 employees who perform Delta Airlines, Inc's day –to- day activity as Delta had contractual

4

agreement with my employer. However, Delta Managers have no supervisory control over me or G2 employees as a whole as G2 employees were controlled and/or supervised by G2 management personnel only.

15. At about 11:45am or so, on Thursday, November 18, 2010, I was on my unpaid lunch break of 30 minutes at the passenger waiting area because G2 employees have no lunchroom from the start and also were prohibited to use Delta Airline employees' lunch room. After I consumed some soft drink and sandwich within 20 minutes, I took a nap for the remaining 10 minutes at the same place where Mr. Gaff had rushed to me in order to disturbed me for my alleged "sleeping" in the middle of the passengers' waiting area. At the time of my sleep in the middle of the passenger area, there was also a Delta Airlines, Inc.'s pilot (Caucasian ) who was also sleeping next to me. When I told Mr. Gaff to do the same on his employee, he told me *"don't worry about him."* Concerned on his action, I ask him whether my color of skin has something to do with his preferential treatment against one race over the other, Mr. Gaff left in a huff and called my manager Romana Chavez to report the incident. The next day I was suspended indefinitely where I construed the decision as constructive discharge because of several factors including for example, my prior filing of numerous internal complaint against G2 with Massachusetts Attorney General Office (on wage law violation) and another with the Massachusetts Commission Against Discrimination "MCAD" (for violating several section of MGL 151B).

16. In 2008, I also had filed administrative complaint against G2 because I was discouraged NOT to form a Labor Union under the NLRB statutes where the arbitrator found the employer action was in violation of the federal law [*2] and on January 14, 2017

---

[*2] *"Based on the complainant's original claim....and his written notification to G2 management of his intent to organize the BOS workforce, outlying his legal rights and protection under the NLRB statute, **it appears Ayele is seeking an opportunity to manage his employer** and misrepresenting for his own gain versus being fairly and justly managed by his employer"*- (emp. Added.

ordered employer to pay six years back pay., Re: Begashaw *Ayele vs. G2 Secure staff, AAA Case No. 01-15-0003-4652.* p.54-56.

17.     Mr. Gaff knows full well that sleeping in the middle of the passengers' waiting area was not uncommon and, for that reason alone previously allowed G2 employees to use Delta airlines, Inc.'s employee lunch room.

18.     Mr. Gaff, however, prohibited G2 employees from using Delta employees' lunch room because my laptop computer was stolen in that room in which I reported the incident to the Airport Police department and several investigation process was conducted on Delta employees where Delta employees were unhappy for police investigation.

19.     Although Delta had no reason to refuse the police investigation, it put pressure against me, the plaintiff, for bringing laptop at workplace where no one is responsible for the loss and subsequently requested me to work multiple jobs that is not in my job description as if Delta was my employer to that of G2. Secure Staff, LLC. Delta and G2 put the pressure on me just to pave the ground for my involuntary resignation (constructive discharge). The two companies (G2 and Delta) wanted my involuntary resignation because, among other things, I also was encouraging other employees to join my effort to form a union so that employees will not be forced to work two jobs for one paycheck only. [*4]

20.     When Delta learn more and knew that I was in collision with my employer for my effort to form a Union I and my other co-workers were assigned multiple task not part of our job description but i/we refused to work two companies' jobs for one payment, and, therefore, companies conspired to terminate me. This include on the napping incident on my rightfully guaranteed break of 30 minutes that which the company do not pay employees for the break time taken under the law.

21. Sleeping/napping on one's own break time (or on even on the company's time) is common at workplace but termination for that reason is uncommon except on this plaintiff. For example, thirteen (13) employees were found sleeping on the job but none of these employees were suspended or terminated. Even four (4) out of the thirteen (13) employees, neither counseled, suspended or terminated. Some employees were found sleeping by Delta airlines, Inc.'s employees <u>and</u> managers as well, but despite Delta's reporting said incident to G2 management, none were suspended or terminated but the plaintiff only.

22. When asked why such differential treatment was imposed against the plaintiff as opposed to other employees, the General Manager, Romana Chavez stated " . . . because it was reported to us by a third party, it was not by G2 Supervisor or manager that witnessed the employee [plaintiff's] sleeping. So in that case, you know, we had to do a little more, you know, leg work to get the fact." * [5]

23. G2 and/or Romana Chavez, however, had not showed a little more "leg work" when sleeping another sleeping incident was reported against G2 employee by Delta Manager because this employee, like the plaintiff had NOT filed prior internal and/or administrative complaint against G2 or have played any role in the Union formation. This employee was an Eritrean and friend of my supervisor who is also Eritrean and therefore, that the disparate treatment was the result of *national origin* discrimination in addition to the Delta Airlines, Inc.'s interference to aid and abet the principal employer, G2 Secure Staff, LLC.

---

*[4] *Delta and G2 are two different employers and their relationship is only on business contract. As G2's employees are supervised/controlled by G2, Delta always ordered this plaintiff to do other job which is not within my job description and without supervisory control over me.*

7

24. In a nutshell, Delta Airlines Inc.'s interference to aid and abate the principal employer to terminate my employment is also constitute *race* discrimination in that the Delta Customer Service Manager, John Goff refused to treat the Delta Pilot who was sleeping next to me because he and the Pilot were Caucasians. I alleged this case to be race discrimination as well not simply because two people were the same race but the answer Mr. Goff given to me indicated that his decision was grounded on race. Mr. Gaff also is known in abusing Black passengers including one old man of a PhD standing.

## **REMEDY REQIESTED**

24. For all Delta Airlines, LLC.'s improper action including violation of the common law and/or of MGL. c. 151B §4(5), the company should be liable as follows:

- Injunction relief baring Delta Airlines in the future to stop interfering on other company Employees' right and cause termination of employment.
- Compensatory award for emotional distress from Delta Airlines, Inc .
- Back pay until the date of entry of the judgment by this court).
- Cost (if not attorney fee) for photocopy, postage and expenses for supplies.
- Punitive Damage as it deem proper by the court
- Interest and compound interest at Massachusetts' prevailing statutory rate of 12%.

WHEREFORE Plaintiff prays for all requested remedy from Delta Airlines, Inc.

Dated March 15, 2018

Respectfully Submitted,

*[signature]*

Begashaw Ayele, Pro Se
261 O'Callaghan Way #816
South Boston, MA 02127
(617) 938-9910
begashawayele@ymail.com

---

*[5]* . *AAA Arbitration Hearing Transcript p.339:9*

## **CERTIFICATE OF SERVICE**

This certify that the foregoing document titled plaintiff's *"COMPLAINT AND DEMAND FOR JURY TRIAL"* has been served on defendant Delta Airlines, Inc. by mailing to the following address below

>Administration office
>and/or HR Department
>Delta Airlines, Inc.
>1030 Delta Blvd.
>Atlanta, GA. 30354-1989

>Sincerely,

Dated March 28, 2018

Begashaw Ayele, pro se
261 O'Callaghan Way,
South Boston, MA 02127
(617) 938-9910
*begashawayele@ymail.com*

9