**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| BEGASHAW AYELE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No.:  18-cv-10617 |
| | ) | |
| DELTA AIRLINES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                    **November 15, 2018**

## I.      Introduction

Plaintiff Begashaw Ayele ("Ayele"), proceeding *pro se*, has filed this lawsuit against

Defendant Delta Airlines, Inc., ("Delta") alleging discrimination under Mass. Gen. L. c. 151B and

Title VI , retaliation under c. 151B and Title VII and interference and aiding and abetting

discrimination under c. 151B.  D. 5.  Pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6), Delta moves

to dismiss Ayele's complaint.  D. 14.  For the reasons stated below, the Court ALLOWS Delta's

motion to dismiss.  D. 14.

## II.      Standard of Review

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court

must determine if the allegations "plausibly narrate a claim for relief."  Schatz v. Republican State

Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).  The Court conducts a two-step, context-

specific inquiry.  See García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First,

the Court must perform a close reading of the complaint "as a whole" to distinguish the factual

allegations from the conclusory legal allegations contained therein.  Id.  The Court must accept the

factual allegations as true.  Id.  (citing Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  The Court may disregard conclusory legal assertions.  Id.  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (internal quotation marks and citation omitted).

"If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Araujo v. UGL Unicco-Unicco Operations, 53 F. Supp. 3d 371, 379 (D. Mass. 2014) (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010)).  When a plaintiff is *pro se*, the Court must apply a liberal reading to the complaint.  Kruskall v. Sallie Mae Serv., Inc., No. 15-cv-11780, 2016 WL 1056973, at *1 (D. Mass. Mar. 14, 2016) (citing Green v. Com. of Mass., 108 F.R.D. 217, 218 (D. Mass. 1985)).  A *pro se* plaintiff, however, must still comply with procedural and substantive law and "dismissal remains appropriate . . . when the complaint fails to even suggest an actionable claim."  Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001).

As to Delta's Rule 12(b)(5) motion, "[a] district court may dismiss a complaint for a plaintiff's failure to effectively serve a defendant with process."  Sosa Polanco v. United States, 2017 WL 9772872, at *1 (D. P.R. December 13, 2017).  "The Court may consider such matters outside of the pleadings when deciding a motion to dismiss based upon lack of service of process under Rule 12(b)(5)."  Awadh v. Tourneau, No. 15-cv-13993-DJC, 2017 WL 1246326, at *1 n.2 (D. Mass. February 17, 2017). Where [the defendant] challenges service of process pursuant to Rule 12(b)(5), [the plaintiff] has the burden of proving he effected proper service."  Id. at *2.

III.    **Factual Background**

The following summary is based upon the allegations in the complaint, which the Court must accept as true in considering Delta's motion to dismiss.  On or about May 3, 2005, Ayele commenced his employment at G2 Secure Staff, Inc., ("G2") as a ticket reader where he confirmed documents of travelers at Terminal C in Boston Logan International Airport ("Logan Airport"). D. 5 at 4.  Ayele worked as a ticket reader for several weeks, standing approximately seven and a half hours a day.  Id.  Due to a pre-existing leg injury, he requested an accommodation.  Id.  G2 granted the accommodation by transferring Ayele to Terminal A where he split his time working as a ticket reader and ramp agent until a full-time ramp agent position became available.  Id.  On December 20, 2006, Ayele reported to the Logan Airport police that his laptop computer had been stolen from Delta's break room.  Id. at 5-6.  Following this incident, Delta no longer permitted G2 employees to use its break room.  Id. at 5.  According to Ayele, subsequent to reporting his laptop stolen, "things changed against" him as G2 required him to work "multiple job[s]" not in his job description.  Id. at 6.  In 2008, Ayele filed an administrative complaint against G2 because he was allegedly "discouraged" from forming a labor union.  Id. at 5.  He asserts that his efforts to encourage other employees to form a union prompted G2's desire to seek his "involuntary resignation" and that both G2 and Delta "conspired to terminate" him.  Id. at 6.  Ayele further alleges that when Delta learned of his efforts, he and some of his co-workers were again "assigned multiple task[s]" not within their job descriptions, which he refused because he did not want to work for "two companies [sic] [] for one payment."  Id.

When a full-time ramp agent position became available, Ayele was assigned to this position until November 19, 2010, the date his employment with G2 ceased.  Id. at 3.  On November 18, 2010, Ayele worked at Delta's shuttle service located at Terminal A, where Delta's Customer

Service Manager, John Gaff ("Gaff"),[1] was also stationed.  Id. at 4.  According to Ayele, although

G2 had an agreement with Delta, the Delta supervisors did not have any control over G2 employees

as only G2 management supervised them.  Id.  At approximately 11:45 a.m. that day, Ayele took

a thirty-minute, unpaid lunch break in the "passenger waiting area," because, according to Ayele,

G2 did not have an employee break room.  Id.  While on break, Ayele spent twenty minutes eating

his lunch followed by a ten-minute nap.  Id. at 5.  According to Ayele, it was not uncommon for

G2 employees to sleep in the passenger waiting area and for this reason, Delta previously permitted

G2 employees to use its break room.  Id.  During his nap, Gaff approached Ayele, "disturb[ing]"

him from sleeping in the passenger waiting area.  Id.  In this same area, Ayele alleges there was

also a Caucasian Delta pilot sleeping next to Ayele, but Gaff did not approach the pilot.  Id.  Ayele

then asked Gaff whether his skin color had anything to do with the "preferential treatment" Gaff

afforded the pilot.  Id.  Gaff subsequently contacted Ayele's supervisor and reported the napping

incident.  Id.  The following day, Ayele was "suspended indefinitely."  Id.  He construed his

suspension as a constructive discharge resulting from his "numerous" internal complaints filed

against G2 with the Massachusetts Attorney General's office concerning wage violation as well as

his complaint filed with Massachusetts Commission Against Discrimination ("MCAD").  Id.

According to Ayele, despite the fact that sleeping in the passenger area was common,

suspension or termination for same was not.  Id. at 6-7.  As he alleges, thirteen other G2 employees

were similarly found sleeping on the job, but none were suspended or terminated.  Id.  Ayele

alleges that when another employee was also found sleeping on the job by a Delta manager and

reported such to G2, the employee was not similarly disciplined.  Id. at 7. Ayele asserts that, unlike

him, this employee had not filed internal and/or administrative complaints against G2 nor did the

---

[1] On occasion in this record, Plaintiff spells the last name of Delta's Customer Service Manager as "Goff."  D. 5 at
4-5.  After review of the record, the Court believes the correct spelling is "Gaff."

employee participate in his union formation efforts.  Id.  Additionally, Ayele alleges that because the employee is Eritrean and a friend of Ayele's supervisor, whom he alleges is also Eritrean, together with the disparate treatment from Delta in "aiding [and] abetting" Ayele's termination, resulted in discrimination.  Id.

## IV.    Procedural History

On May 16, 2011, Ayele filed charges with MCAD alleging his former employer, G2, unlawfully subjected him to discrimination on the basis of his national origin, sex, and disability and retaliated against him in violation of Title VII of the Civil Rights Act of 1964 and Mass. Gen. L. c. 151B, § 4(1), (4), (16).  D. 5 at 1; D. 18-2 at 16.  On August 19, 2011, and on August 30, 2011, Ayele amended his MCAD complaint to include new allegations of race discrimination against Delta and G2 supervisors.  D. 18-2 at 16.  Ayele concurrently filed his charge with the U.S. Equal Employment Opportunity Commission ("EEOC").  D. 15-1 at 13.  On May 3, 2012, MCAD issued a lack of probable cause finding and dismissed Ayele's discrimination claim.  D. 15-1 at 4-5.  On October 23, 2012, EEOC adopted MCAD's finding and dismissed the claim.  D. 15-1 at 13. Ayele filed a lawsuit in Suffolk Superior Court on January 3, 2012, against G2 alleging a violation of the Massachusetts Wage Act.  Ayele v. G2 Secure Staff, LLC, No. 12-00003 (Mass. Super. Ct. Jan. 13, 2012).   On September 26, 2012, Suffolk Superior Court issued an order compelling arbitration, which Ayele unsuccessfully appealed.  Ayele v. G2 Secure Staff, LLC, 84 Mass. App. Ct. 1136, review denied, 468 Mass. 1101, cert. denied, __ U.S. __, 135 S. Ct. 267 (2014).  His claims against G2 were eventually arbitrated pursuant to an arbitration agreement, to which Delta was not party.  D. 5 at 1.  The arbitrator issued an award affording Ayele with some, and not all, of his requested relief.  D. 18-2 at 18, 71-74.  On May 5, 2017, Ayele moved to vacate the award, which the Court denied.  See Ayele v. G2 Secure Staff, LLC, Case No. 1:17-cv-10417-RGS (D.

Mass. May 5, 2017), ECF No. 23.  On March 29, 2018, Ayele filed this lawsuit against Delta, D.

1, and on April 9, 2018, filed an amended complaint.  D. 5.  Delta has now moved to dismiss

Ayele's amended complaint.  D. 14.  The Court heard the parties on the pending motion and took

this matter under advisement.  D. 24.

## V.       Discussion

### A.  Ayele Has Failed to Serve Delta Under Rule 4

Delta moves for dismissal under Fed. R. Civ. P. Rule 12(b)(5) and 12(b)(6).  As to the Rule

12(b)(5) motion, Delta contends that Ayele has failed to effect service of process in compliance

with Fed. R. Civ. P. 4(h).  Under Rule 4(h), a litigant may serve a corporation "(1) by following

the state law process for serving a summons in an action brought in courts of general jurisdiction

in the state where the district court is located or where service is made . . . , or (2) delivering a

copy of the summons and the complaint to an officer, managing or general agent, or any other

agent authorized by appointment or by law to receive service of process." Leung v. Citizens Bank,

No. 12-cv-11060-FDS, 2013 WL 1992453, at *2 (D. Mass. May 10, 2013) (citing Fed. R. Civ. P.

4(h)).  Under Massachusetts rules, a litigant may effect service by either delivering a summons

and complaint to an officer, a managing or general agent or the person in charge of the business at

its principal place of business or by delivering copies to any other agent authorized to receive such

service of process.  Leung, 2013 WL 1992453, at *2 (citing Mass. R. Civ. P. 4(d)(2)).  Under

Georgia law, where Delta is domiciled, the statute states in relevant part:

> [i]f the action is against a corporation incorporated or domesticated under the laws
> of this state . . . to the president or other officer of such corporation or. . .a managing
> agent thereof, or a registered agent thereof, provided that when for any reason
> service cannot be had in such manner, the Secretary of State shall be an agent of
> such corporation. . . upon whom any process, notice, or demand may be served.

Ga. Code Ann. § 9-11-4.

> A corporation's registered agent is the corporation's agent for service of process, notice, or demand required or permitted by law to be served on the corporation.
>
> If a corporation has no registered agent or the agent cannot with reasonable diligence be served, the corporation may be served by registered or certified mail or statutory overnight delivery, return receipt requested, addressed to the secretary of the corporation at its principal office.

Ga. Code Ann. § 14-2-504.  Ayele carries the burden of demonstrating proper service of process. Morales v. Spencer, 52 F. Supp. 3d 362, 365 (D. Mass. 2014).  Ayele contends that he effected service of process when he made delivery to Delta via registered mail at its principal place of business in Georgia.  D. 17 at 9; D. 18-2 at 10, 12.  While Ayele did attempt delivery to Delta via registered mail, he addressed the mailing to Delta's secretary and instead addressed it to "Delta Airlines, Inc.," and subsequently to "HR Dept/Legal Dept or Brian B. San Souci, Delta Airlines, Inc.,"  See D. 18-2.  San Souci, a senior paralegal at Delta, is not the company's secretary or registered agent.  See D. 18-2 at 14.  Accordingly, Ayele did not effect timely service on Delta.

Pursuant to Rule 4(m), however, "if the plaintiff shows good cause for the failure [to effect proper service in a timely manner], the court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m).  The mere fact that a plaintiff is *pro se*, however, "is not automatically enough to constitute good cause for purposes of Rule 4(m)."  McIsaac v. Ford, 193 F. Supp. 2d 382, 383 (D. Mass. 2002).  "In determining what is and what is not good cause, the federal courts obviously are obligated to balance the clear intent of Rule 4(m) and the desire to provide litigants their day in court.  Insisting on a timely service of process and assuring litigants a just adjudication on the merits of an action are not inconsistent, but over-emphasis on either could lead to undesired consequences."  Id. at 384 (citing Wright & Miller, Federal Practice and Procedure: Civil 3d § 1137, at 373-74 (2002)).  Here, however, Ayele has failed to address sufficiently why he could not serve Delta as required within the timeframe under Rule 4 or good cause for the failure to do so.  Accordingly, no extension for same is warranted on this record.

### B.  Ayele's Claims are Time Barred

Even assuming that Ayele had properly served Delta, his claims still fail.  Delta argues that the Court must dismiss Ayele's complaint because both his state and federal claims are time barred. Under Title VII, a plaintiff must file his complaint within ninety days of EEOC's issuance of its right-to-sue letter.  Noviello v. City of Boston, 398 F.3d 76, 85 (1st Cir. 2005).  For a claim under c. 151B, the statute of limitations is three years after the alleged unlawful occurrence.  Mass. Gen. L. c. 151B, § 9.  When the alleged discrimination is a definitive act such as failure to promote, termination or constructive discharge (as alleged here), the limitations period starts on the date such incident occurred.  Ocean Spray Cranberries, Inc. v. Mass. Comm'n Against Discrimination, 441 Mass. 632, 641 (2004).

Here, Ayele's claims are time barred under Title VII and c. 151B.  As to his Title VII claims, the EEOC issued its right-to-sue letter to Ayele on October 23, 2012, D. 15-1 at 13.  Ayele did not file this action until March 29, 2018, D. 1, a number of years past the ninety-day period required under the statute.  See Noviello, 398 F.3d at 85.  As to his claims under c. 151B, Ayele alleges that he was constructively discharged on November 19, 2010, D. 5 ¶ 13, but did not file this complaint until March 29, 2018, over seven years later.  Ayele responds by pointing to his prior state court litigation against G2 in which he attempted to amend his claims to add Delta as a defendant in 2012, D. 17 at 6, and then was waiting for the arbitration against G2 to conclude. Even assuming this sequence of events, they do not justify the untimeliness of Ayele's claims in this action against Delta.  Accordingly, Ayele's claims against Delta are timed barred.

### C.  Ayele, Even As Alleged, Had No Employment Relationship with Delta

Even assuming the complaint was timely filed, Delta argues that Ayele fails to state a plausible claim for discrimination because Ayele has not alleged that he has ever been employed

by Delta.  D. 15 at 1.  To invoke the protections of Title VII, there must be an employment relationship between plaintiff and defendant.  Mercado-Reyes v. Vazquez Home Care, CRL, 254 F. Supp. 3d 316, 318 (D.P.R. 2017); Araujo, 53 F. Supp. 3d at 381; see Lopez v. Massachusetts, 588 F.3d 69, 72 (1st Cir. 2009) (holding that "Title VII claim depends on the [defendant] being the 'employer' of the [plaintiff] officers").

In this case, Ayele has not alleged that he was employed by Delta nor that any form of an employment relationship existed between the parties.  See D. 5 at 4.  Although Ayele alleges his employer G2 has an agreement with Delta, it is unclear from the allegations what type of agreement the entities allegedly had in place.  See id.  Ayele, even as alleged, was not employed by Delta, Delta did not possess any control over him or any G2 employees and he was supervised by G2 management.  Id.; D. 17 at 7.  Accordingly, Ayele's discrimination claim fails under Title VII as he cannot succeed on such claim against Delta without first establishing that an employment relationship existed between the parties.  See Mercado-Reyes, 254 F. Supp. 3d at 318.

To the extent that Ayele alleged a claim under Mass. Gen. L. c. 151B, § 4(1), this too fails as the same principle applies to this state law claim.  See Lopez, 588 F.3d at 73.  "[N]o Massachusetts appellate decision ever has interpreted § 4(1) to apply to an action brought by or against someone outside the employment unit."  Thomas O'Connor Constructors, Inc. v. Mass. Comm'n Against Discrimination, 72 Mass. App. Ct. 549, 556 (2008).  Given that no employment relationship ever existed between Ayele and Delta, Ayele has also failed to state a plausible claim under § 4(1) of c. 151B.  See Baldwin v. Pilgrim Nuclear Power Station, 529 F. Supp. 2d 204, 211 (D. Mass. 2008) (holding that employer could not be liable where there were no employment relationship between the two parties).[2]

_____

[2] The Court recognizes that this analysis does not apply to Ayele's claims for retaliation, interference or aiding or abetting discrimination under c. 151B where the prohibited acts for such conduct apply to "any person" as opposed to

## VI.     Conclusion

For the foregoing reasons, the Court ALLOWS Delta's motion to dismiss.  D. 14.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

just an employer.  Mass. Gen. L. c. 151B, §§ 4(4), 4(4A), 4(5).  Since these claims, like the claim under c. 151B, § 4(1), are time-barred as discussed above, the Court need not further address the merits of these other claims.